**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **AMERICAN CONSERVATIVE UNION, and AMERICAN CONSERVATIVE UNION FOUNDATION,**<br><br>　　　　**Plaintiffs,**<br><br>**vs.**<br><br>**INSTITUTE FOR LEGISLATIVE ANALYSIS, RYAN MCGOWAN, FREDERICK MCGRATH, BRYAN AXLER, ZOE REESE, and FRANCIS FINNEGAN**<br><br>　　　　**Defendants.** | **Case No.:**<br><br>**Judge** |

## COMPLAINT

Plaintiffs, American Conservative Union ("ACU") and American Conservative Union Foundation ("ACUF") (collectively referenced herein as "Plaintiffs" or "CPAC"), by and through the undersigned counsel, file this Complaint against Defendants Institute for Legislative Analysis ("ILA"), Mr. Ryan McGowan ("McGowan"), Mr. Frederick McGrath ("McGrath"), Mr. Bryan Axler ("Axler"), Ms. Zoe Reese ("Reese") and Mr. Francis Finnegan ("Finnegan")

(collectively referenced herein as "Defendants") and, in support thereof, avers as follows:

## Summary of the Action

1. ACU and ACUF bring this lawsuit to address specific harms caused by their former employees, Defendants McGowan, McGrath, Axler, Reese and Finnegan, who, unlawfully misappropriated Plaintiffs' highly sensitive and confidential trade secret information to create Defendant ILA for the express purpose of unfairly competing with Plaintiffs thereby causing Plaintiffs substantial harm.

2. While employed by Plaintiffs, Defendant McGowan manually overrode internal controls to add accrued leave time for himself – and Defendants McGrath and Finnegan – such that Defendants McGowan, McGrath and Finnegan appeared eligible to receive benefits from Plaintiffs to which they were not entitled.

3. Following the end of their employment with Plaintiffs, Defendants McGowan, McGrath, Axler, Reese and Finnegan created and began operating Defendant ILA by improperly utilizing the highly confidential trade secret information wrongfully stolen from Plaintiffs.

4. Not only did Defendants McGowan, McGrath, Axler, Reese and Finnegan launch Defendant ILA on the strength of Plaintiff's propriety trade secret information, ILA was launched with a logo that is substantially similar to that of

2

Plaintiffs' federally registered trademark, causing confusion amongst legislators and the general public as to the relationship between Plaintiffs and Defendant ILA, thereby harming Plaintiffs.

5.    Following the launch, Defendant ILA published numerous articles, including a series entitled "Help Law Enforcement Stand up to Soros – Sign the Petition" (the "Soros Files") authored by Defendant Reese, that contains false and misleading information about Plaintiffs and their business operations, causing Plaintiffs further harm.

## Parties

6.    Plaintiff ACU is a 501(c)(4) nonprofit organization located at 1199 North Fairfax Street, Suite 500, Alexandria, Virginia 22314.

7.    Plaintiff ACUF is a 501(c)(3) nonprofit organization located at 1199 North Fairfax Street, Suite 500, Alexandria, Virginia 22314.

8.    Defendant ILA is a political research organization that was incorporated in the State of Delaware on March 16, 2023 and, upon information and belief, has an office address of 300 Independence Avenue SE, Washington, D.C. 20003.

9.    Upon information and belief, Defendant ILA was incorporated by Defendants McGowan, McGrath, Axler, Reese and/or Finnegan.

10. Defendant McGowan is a former employee of Plaintiffs and the current Chief Executive Officer of Defendant ILA, who, upon information and belief, resides in Montgomery County, Maryland.

11. Defendant McGrath is a former employee of Plaintiffs and the current President of Defendant ILA, who, upon information and belief, resides in Charles County, Maryland.

12. Defendant Axler is a former employee of Plaintiffs and the current Director of Policy Analysis for Defendant ILA, who, upon information and belief, resides in Cobb County, Georgia.

13. Defendant Reese is a former employee of Plaintiffs and the current Director of Legislative Research for Defendant ILA, who, upon information and belief, resides in Clark County, Nevada.

14. Defendant Finnegan is a former employee of Plaintiffs and the current Vice President and Database Manager of Defendant ILA, who, upon information and belief, resides in Ventura County, California.

## **Jurisdiction and Venue**

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq*., Federal Trademark Infringement, 15 U.S.C. § 1114, and False Designation of Origin, 15 U.S.C. § 1125.

This Court further has subject matter jurisdiction under 28 U.S.C. § 1367 (supplemental jurisdiction) over the supplemental state law claims because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

16.  This Court has personal jurisdiction over Defendant ILA because it conducts business in Virginia and in this District.

17.  This Court has personal jurisdiction over Defendants McGowan, McGrath, Axler, Reese, Finnegan, as this action arises from their knowing and intentional breach of certain statutory and common law obligations to Plaintiffs while acting within and causing injury within the Commonwealth of Virginia and within this Judicial District.

18.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to Plaintiffs' claims occurred in this District.

## **Factual Background**

### ***Plaintiffs' Business, Policies & Procedures***

19.  Plaintiff ACU is a 501(c)(4) non-profit organization that serves to unite and mobilize conservatives around the tenants of conservativism, through various events, trainings, and policy forums around the country.

20.  Plaintiff ACUF is a 501(c)(3) non-profit organization that serves to educate citizens about conservative principles by simplifying complex issues and making them accessible to all Americans.

21.  Plaintiffs jointly host the Conservative Political Action Conference ("CPAC"). Plaintiff ACUF *inter alia*, through its Center for Legislative Accountability, issues ratings of state and federal lawmakers across various policy areas based upon their voting records.

22. Plaintiffs have developed the nation's first and only 50-state comprehensive scorecard for legislators.

23.  Over the course of the last fifty (50) plus years, Plaintiffs have developed their own methods, methodologies, and algorithms for rating public officials, and this strategy is not publically known.

24.  Plaintiffs' methods, methodologies and algorithms include how each legislator is assessed, how voting records are considered, and the bills each legislator sponsors, as well as how all of this information is utilized in calculating a legislator's rating.

25.  Plaintiffs rating and scorecard system has enhanced and developed Plaintiffs' reputation and donor base.

26.  Plaintiffs require all employees to review and execute non-disclosure and confidentiality agreements (the "Agreements") and have developed and

implemented written policies (the "Policies") to adequately safeguard their confidential and proprietary information.   The Policies are provided to all employees.

27.   Among other restrictions and safeguards, the Policies forbid employees from (a) disclosing or disseminating any confidential information or trade secrets to anyone outside of Plaintiffs without the appropriate authorization; and (b) using Plaintiffs' work product for any purpose not related to Plaintiffs, for personal use, or while employed elsewhere.

28.   The Agreements provide, in relevant part, the following:

a. The employee's access to and use of Plaintiffs' confidential information is only for the purposes of the employee's employment;

b. Employee is not to disclose Plaintiffs' confidential information to any third party without Plaintiffs' written consent;

c. Employee has a duty to prevent and protect Plaintiffs' confidential information from unauthorized disclosure;

d. All confidential information shall remain the property of Plaintiffs; and

e. Upon termination of the relationship between Plaintiffs and the employee, the employee agrees to return all confidential information to Plaintiffs or, in the case of confidential information that cannot be returned, destroy it.

29.   Because Plaintiffs have created the nation's first and leading 50-state comprehensive scorecard for legislators, confidentiality is critical to Plaintiffs' operation.

30.   On or about December 4, 2018, ACU, filed a trademark application with the United States Patent and Trademark Office for it "Star Mark," which Plaintiffs depict on their scorecards to enable the public to recognize that the score cards are put out by Plaintiffs and to distinguish them from competitors.   The application was approved and the trademark was registered on or about July 23, 2019.  *See* Exhibit "A".

31.   ACU's "Star Mark" is depicted below:



***McGowan, McGrath, Axler, Reese and Finnegan Misappropriate Plaintiffs'***
***Information and Establishment of ILA***

### i.   McGowan

32.   McGowan was hired on or about September 12, 2016 and served as Plaintiffs' Director of Finance and Operations.

33.   As Plaintiffs' Director of Finance and Operations, McGowan was responsible for overseeing and accounting for donations, payroll, accounts receivable, and accounts payable.  McGowan also had responsibilities related to Human Resources, including approval of paid time off. McGowan was relieved of these Human Resources responsibilities entirely upon Lynne Rasmussen becoming Senior Vice President of Operations on or about October 1, 2022.

34.   During the course of his employment, on or about December 22, 2022, McGowan executed an Agreement, which included confidentiality and non-disclosure provisions.  A true and correct copy of McGowan's Agreement is attached hereto as Exhibit "B".

35.   Prior to the end of McGowan's employment with Plaintiffs, but during the time that Defendants McGrath, Finnegan, Reese, and Axler were planning to establish an entity that would directly compete with Plaintiffs, McGowan, without Plaintiffs' authorization, manually overrode internal controls to add accrued leave time for himself, Defendants McGrath and Finnegan, and others, including individuals that he was hoping to have future business relationships with, in excess of $14,000.

36. Thereafter, McGowan voluntarily resigned and his last day of employment for Plaintiffs was on or about March 17, 2023 – the day after ILA had been incorporated.

37.   Despite resigning from Plaintiffs' employment and being required to return all of Plaintiffs' property as set forth in his Agreement, McGowan retained, and continues to retain, possession of Plaintiffs' laptop computer.

38.   Plaintiffs' laptop computer contains Plaintiffs' confidential, proprietary and trade secret information, including the methods, methodologies and algorithms utilized in rating state and federal legislators.

39.   To date, McGowan has not compensated Plaintiffs for the amount embezzled from Plaintiffs, nor has McGowan returned Plaintiffs' laptop computer.

### ii.   *McGrath*

40.   McGrath was hired as an intern on or about December 16, 2014 and was promoted to Director for the Center for Legislative Accountability on or about May 1, 2015.

41.   As Plaintiffs' Director for the Center of Legislative Accountability, McGrath directed the research and publication of Plaintiffs' ratings of state and federal lawmakers.

42.   During the course of his employment, on or about December 21, 2022, McGrath executed an Agreement, which included confidentiality and non-disclosure provisions.  A true and correct copy of McGrath's Agreement is attached hereto as Exhibit "C".

43.  McGrath's last day of employment for Plaintiffs was on March 14, 2023.

### iii.  *Axler*

44.  Axler was hired as an intern on or about May 17, 2022 and, on or about May 23, 2022, was promoted to Policy Analyst for the Center for Legislative Accountability.

45.  As Plaintiffs' Policy Analyst for the Center for Legislative Accountability, Axler was responsible for researching and summarizing state and federal legislation, including how legislators voted on various bills, to be used as part of CPAC's system for calculating and publishing its lawmaker ratings.

46.  During the course of his employment, on or about December 19, 2022, Axler executed an Agreement, which included confidentiality and non-disclosure provisions.  A true and correct copy of Axler's Agreement is attached hereto as Exhibit "D".

47.  Axler's his last day of employment for Plaintiffs was on or about March 23, 2023.

### iv.  *Reese*

48.  Reese was hired on or about August 31, 2020 as an intern and, on or about December 10, 2020, was promoted to Operations Associate for the Center for Legislative Accountability.

49.   On or about October 1, 2022, Reese was promoted to Plaintiffs' Policy Coordinator for the Center for Legislative Accountability.

50.   As Plaintiffs' Policy Coordinator for the Center for Legislative Accountability, Reese was responsible for researching legislation and legislator voting records, which were then used as part of CPAC's system for calculating and publishing its lawmaker ratings.

51.   During the course of her employment, on or about December 22, 2022, Reese executed an Agreement, which included confidentiality and non-disclosure provisions.  A true and correct copy of Reese's Agreement is attached hereto as Exhibit "E".

52.   Reese's last day of employment for Plaintiffs was on or about March 23, 2023.

   **v.   *Finnegan***

53.   Finnegan was hired on or about October 16, 2014 as a Government Relations Intern and was promoted to Government Relations Associate on or about March 26, 2015.

54.   As Plaintiffs' Government Relations Associate, Finnegan was responsible for the statistics, data manipulation, and analytics that were used to rate state and federal legislators and provide each legislator with scores and any applicable CPAC awards.

55.   During the course of his employment, on or about December 21, 2022, Finnegan executed an Agreement, which included confidentiality and non-disclosure provisions.  A true and correct copy of Finnegan's Agreement is attached hereto as Exhibit "F".

56.   Finnegan's his last day of employment for Plaintiffs was on or about March 14, 2023.

### iv.   ILA

57.   Defendants McGowan, McGrath, Axler, Reese, and Finnegan all gave notice of their intent to resign in March of 2023, and Defendant ILA was incorporated on March 16, 2023 – in the midst of Defendants McGrath, Axler, Reese, and Finnegan's resignation and one day before McGowan's final day.

58.   Upon information and belief, Defendant ILA was incorporated by Defendants McGowan, McGrath, Axler, Reese and/or Finnegan.

59.   Upon information and belief, Defendants McGowan, McGrath, Axler, Reese and Finnegan utilized and are utilizing Plaintiffs' confidential, proprietary and trade secret information for their own gain by forming ILA and directly competing with Plaintiffs.

60.  Like Plaintiffs, ILA rates state and federal legislators and issues "scorecards" based upon the legislator's voting history.

61.   Defendant McGowan remains in possession of Plaintiffs' laptop, which contains the methods, methodologies and algorithms used by Plaintiffs for creating and calculating their legislator ratings.

62.   Upon information and belief, Defendant McGowan, without Plaintiffs' permission, retained Plaintiffs' laptop computer in order to access Plaintiffs' confidential, proprietary and trade secret information to assist with the development and creation of ILA.

63.   Defendants McGowan, McGrath, Axler, Reese and Finnegan pride themselves on being former employees of Plaintiffs and advertise such on Defendant ILA's website.  A true and correct copy of the "About" section of Defendant ILA's website is attached hereto as Exhibit "G".

64.   According to ILA's website, McGowan serves as ILA's Chief Executive Officer, and boasts that he previously "held the top finance position at the American Conservative Union where he served for over 6 years."  *See* Exhibit "G" at p. 12.

65.   According to ILA's website, McGrath serves as ILA's President, and acknowledges that "[h]e previously served as the Director of the Center for Legislative Accountability at the American Conservative Union (CPAC), where he spent a decade leading the creation of the nation's first and only legislative scorecard program covering all 8,000 federal and state lawmakers."  Exhibit "G" at p. 12.

14

66.  According to ILA's website, Axler serves as ILA's Director of Policy Analysis "where he plays a critical role in managing the review of policy and legislative procedure across the scorecard creation process."  Exhibit "G" at p. 13.

67.  According to ILA's website, Reese "serves as the ILA's Director of Legislative Research and directs the research processes for ILA's congressional and 50 state scorecards."  Exhibit "G" at p. 13.

68.  According to ILA's website, Finnegan "directs the ILA's data and analytics operations."  Exhibit "G" at p. 12.

69.  Upon information and belief, Defendants McGowan, McGrath, Axler, Reese and Finnegan have utilized Plaintiffs' confidential, proprietary and trade secret information –that they obtained while employed by Plaintiffs –  to establish a competing lawmaker scorecard known as the Limited Government Index:

> To lead the construction of this revolutionary new scorecard platform, the ILA enlisted the original architects of the nation's first and only 50-state comprehensive scorecard produced at the American Conservative Union. These individuals are utilizing a decade of experience they each gained while building the ACU rating system to develop the new ultimate scorecard – the Limited Government Index (LGI).

Exhibit "G" at p. 6.

70.  A review of ILA's website and publications reveals that Plaintiffs' confidential, proprietary and trade secret information has been utilized without Plaintiffs' authorization and for purposes not related to Defendants McGowan, McGrath, Axler, Reese and Finnegan's employment with Plaintiffs.

71.   On or about February 1, 2024, ILA published the "Soros Files" on its website.  A true and correct copy of the "Soros Files" are attached hereto as Exhibit "H".

72.   The "Soros Files" are authored by Reese and include false and defamatory statements regarding Plaintiffs.

73.   The "Soros Files" encompass 33 separate articles, which include, but are not limited to, the following defamatory, false and misleading statements ("Defamatory Statements"):

a.   "It appears Zuckerberg coordinated with CPAC to help advance racial justice through arguably the most powerful tool in the nation for lobbying Republicans."

b.   "It is therefore not surprising why Soros, Zuckerberg and Arnold have so heavily invested in CPAC to control its scorecard."

c.   "John Arnold is one of those billionaires that has made significant investments into CPAC."

d.   "CPAC works to bring [John] Arnold's New York City's Cashless Bail Policy to Other States."

e.   "It appears CPAC has become an important partner to [John] Arnold in advancing the bail elimination policies despite the crime they have been documented to cause.  For example, CPAC has lobbied the Ohio

16

legislature on enacting a 'bail reform' policy just like the one enacted in New York."

    f.   "Meet CPAC Billionaire Funder George Soros."

    g.   "…CPAC has at least two Soros-funded prosecutors on its staff."

Exhibit "G".

74.    Prior to ILA and Reese publishing the "Soros Files," Plaintiffs entered into an agreement with a substantial donor to be a key sponsor for various events during CPAC 2024. Following publication, however, the substantial donor abruptly withdrew its sponsorship, citing the "Soros Files" as the precipitating cause.

75.    Following the publication of the "Soros Files," on or about February 8, 2024, the substantial donor contacted Plaintiffs regarding the "Soros Files" and withdrew from sponsoring events during CPAC 2024.

76.    To add insult to injury, ILA created and adopted a logo displaying a star, as well as colors and graphics that are substantially similar to Plaintiffs' CPAC mark and scorecard presentation, in order to cause consumer confusion.

77.    Defendant ILA's star logo is depicted below:



78.   Defendant ILA's star logo, colors and graphics have caused confusion amongst legislators, who incorrectly believe that they are being recognized by CPAC and that Plaintiffs and Defendant ILA are related entities.  A true and correct copy of two posts Defendant ILA shared on Twitter/X demonstrating the confusion are attached hereto as Exhibit "I".

79.   Defendant ILA has not corrected or otherwise addressed the confusion that their star logo has caused and have, indeed, shared social media posts made by legislators who made such an error.  *See* Exhibit "I".

## COUNT I
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT,
## 18 U.S.C. § 1030
(Against Defendants, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

80.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

81.   Plaintiffs utilize protected computers in their interstate and foreign commerce activities, which are connected to the internet.

82.   During the course of their employment with Plaintiffs, Defendants McGowan, McGrath, Axler, Reese and Finnegan had access to Plaintiffs' protected computers.

83.   Without Plaintiffs' permission, Defendant McGowan has retained Plaintiffs' laptop computer, which contains Plaintiffs' confidential, proprietary and trade secret information to assist with the development and creation of ILA.

84.   Plaintiffs' policies prohibit the use of their property, including trade secrets, for any non ACU/ACUF-related purpose, for personal use, or for use while employed elsewhere.

85.   As described above, prior to leaving Plaintiffs employ, Defendants McGowan, McGrath, Axler, Reese and Finnegan knowingly and intentionally accessed Plaintiffs' protected computer systems, without authorization, or by exceeding authorized access, and obtained information of value, including Plaintiffs'

confidential, proprietary and trade secret information, in violation of 18 U.S.C. § 1030.

86. As a direct and proximate result of Defendants McGowan, McGrath, Axler, Reese and Finnegan's misconduct, Plaintiffs have suffered damage and loss in excess of $5,000.

**COUNT II**
**VIOLATION OF THE VIRGINIA COMPUTER CRIMES ACT,**
**Va. Code Ann. § 18.2-152.1, *et seq.***
(Against Defendants McGowan, McGrath, Axler, Reese, and Finnegan, jointly and
severally)

87. Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

88. Defendants, McGowan, McGrath, Axler, Reese, and Finnegan have used Plaintiffs' computers and/or computer network without authority and have obtained property by false pretenses and/or converted Plaintiffs' property in violation of Va. Code Ann. § 18.2-152.3.

89. Without Plaintiffs' permission, Defendant McGowan has retained Plaintiffs' laptop computer, which contains Plaintiffs' confidential, proprietary and trade secret information to assist with the development and creation of ILA.

90. As described above, Defendants McGowan, McGrath, Axler, Reese, and Finnegan, violated Plaintiffs' Policies by utilizing Plaintiffs' property, including

trade secrets, for non ACU/ACUF-related purposes, for personal use, and/or for use while employed elsewhere.

91.  Defendants McGowan, McGrath, Axler, Reese, and Finnegan converted Plaintiffs' property for their own benefit and are, therefore, guilty of computer fraud.

92.  As a result of Defendants McGowan, McGrath, Axler, Reese, and Finnegan's unlawful actions, Plaintiffs are entitled to damages, including the costs of this suit, as provided in Va. Code Ann. § 18.2-152.12.

<u>**COUNT III**</u>
**VIOLATION OF THE VIRGINIA COMPUTER CRIMES ACT,**
**Va. Code Ann. § 18.2-152.1, *et seq.***
(Against Defendant, McGowan)

93.  Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

94.  Defendant McGowan used Plaintiffs' computers and/or computer network without authority and embezzled money from Plaintiffs in violation of Va. Code Ann. § 18.2-152.3.

95.  As described above, Defendant McGowan entered the ADP payroll system and manually overrode internal controls to add accrued leave time for the benefit of individuals, including, but not limited to, himself and Defendants McGrath and Finnegan.

96.   Defendant McGowan was not authorized to make changes to accrued leave time for any individuals and did not seek authorization or otherwise discuss any changes to accrued leave time with any of Plaintiffs' personnel.

97.   As a result of McGowan's unauthorized access and alterations to Plaintiffs' internal controls for accrued leave time, Defendants McGowan, McGrath, and Finnegan were overpaid by no less than $14,362.79.As a result of this scheme, Defendant McGowan embezzled no less than $14,362.79 from Plaintiffs.

98.   As a result of Defendant McGowan's unlawful conduct, Plaintiffs are entitled to damages, including the costs of this suit, as provided in Va. Code Ann. § 18.2-152.12.

<u>**COUNT IV**</u>
**VIOLATION OF THE DEFEND TRADE SECRETS ACT,**
**18 U.S.C. § 1836**
(Against Defendants, ILA, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

99.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

100.   Plaintiffs own trade secrets, including the methods, methodologies, and algorithms, utilized in rating lawmakers, which are critical to Plaintiffs' success and are intended for and/or are used in interstate and foreign commerce.

101.   Plaintiffs' trade secrets, including their methods, methodologies and algorithms, are not generally known to, and are not readily ascertainable by proper means, by others who can gain economic value from its use and/or disclosure.

102.   Plaintiffs exercise reasonable efforts to maintain the secrecy of its trade secrets, including its methodology for rating lawmakers and developing scorecards.

103.   By virtue of their positions in Plaintiffs' Center for Legislative Accountability division, Defendants McGowan, McGrath, Axler, Reese, and Finnegan had access to Plaintiffs' methodology for rating lawmakers and developing scorecards and, in direct violation of Plaintiffs' Policies and their Agreements with Plaintiffs, Defendants McGowan, McGrath, Axler, Reese, and Finnegan unlawfully misappropriated and used Plaintiffs' trade secrets to create and develop a competing entity and rating system.

104.   Plaintiffs' trade secrets, including the methodology for rating lawmakers and developing scorecards, are valuable assets of Plaintiffs that provide Plaintiffs with a competitive advantage in the marketplace.

105.   Defendants McGowan, McGrath, Axler, Reese, and Finnegan had a duty to maintain the secrecy of Plaintiffs' trade secrets.

106.   ILA is liable for misappropriation, because ILA knew or had reason to know that Plaintiffs' trade secrets were acquired by improper means, as

Defendants McGowan, McGrath, Axler, Reese, and Finnegan were all former employees of Plaintiffs and Plaintiffs are direct competitors of Defendant ILA.

107.  Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's misappropriation of Plaintiffs' trade secrets was willful and malicious.

108.  Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's egregious misappropriation of Plaintiffs' trade secrets warrants the imposition of punitive damages.

109.  As a direct and proximate result of Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's willful and malicious misappropriation, Plaintiffs have sustained and continue to sustain irreparable harm and are entitled to recovery of the damages requested, including attorney fees, treble damages under the Defend Trade Secrets Act, and all other relief this Court deems just and proper.

## COUNT V
### VIOLATION OF THE VIRGINIA UNIFORM TRADE SECRETS ACT,
Va. Code § 59.1-336, *et seq.*
(Against Defendants, ILA, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

110.  Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

111.  As employees of Plaintiffs, Defendants McGowan, McGrath, Axler, Reese, and Finnegan had access to and received confidential and proprietary information belonging to Plaintiffs that was to be used only for the benefit of

Plaintiffs. This information includes, but is not limited to, the methodology used to rank lawmakers.

112. Defendants McGowan, McGrath, Axler, Reese, and Finnegan utilized Plaintiffs' confidential, proprietary and trade secret information to create and develop ILA.

113. Plaintiffs' confidential, proprietary and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use.

114. Plaintiffs' confidential, proprietary and trade secret information was subject to efforts by Plaintiffs to maintain its secrecy that were reasonable under the circumstances.

115. Transfer of this information by Defendants McGowan, McGrath, Axler, Reese, and Finnegan to ILA was misappropriation under Va. Code § 59.1-336 because Defendants McGowan, McGrath, Axler, Reese, and Finnegan knew at the time of disclosure that the knowledge and information was acquired under circumstances giving rise to a duty to maintain its secrecy.

116. Defendant ILA is liable for misappropriation under Va. Code § 59.1-336, because Defendant ILA knew or had reason to know that Plaintiffs' trade secrets were acquired by improper means, as Defendants McGowan, McGrath,

Axler, Reese, and Finnegan were all former employees of Plaintiffs and Plaintiffs are direct competitors of Defendant ILA.

117.   Plaintiffs have suffered and continue to suffer damages as a result of Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's misappropriation.

118.   Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's misappropriation was intentional, purposeful, with malice, and without lawful justification, entitling Plaintiffs to punitive damages and an award of attorneys' fees.

119.   As a direct and proximate result of Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's willful and malicious misappropriation, Plaintiffs have sustained and continue to sustain irreparable harm and are entitled to recovery of the damages requested, including attorney fees, treble damages under the Defend Trade Secrets Act, and all other relief this Court deems just and proper.

## COUNT VI
### BREACH OF FIDUCIARY DUTY
(Against Defendants, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

120.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

121.   As Plaintiffs' former employees, Defendants McGowan, McGrath, Axler, Reese, and Finnegan owed Plaintiffs fiduciary obligations under Virginia and

common law, both before and after resigning from Plaintiffs' employ, particularly including matters related to confidential, proprietary and trade secret information.

122.  Defendants McGowan, McGrath, Axler, Reese, and Finnegan breached their ongoing fiduciary duty to Plaintiffs by virtue of the conduct alleged in this Complaint, including, without limitation, by intentionally taking and misusing Plaintiffs' confidential, proprietary and trade secret information, which Defendants McGowan, McGrath, Axler, Reese, and Finnegan acquired as Plaintiffs employees, to the detriment of Plaintiffs.

123.  As a direct and proximate result of Defendants McGowan, McGrath, Axler, Reese, and Finnegan's breaches of fiduciary duty to Plaintiffs, Plaintiffs have suffered and will continue to suffer damages.

## COUNT VII
## COMMON LAW CONVERSION
(Against Defendants, ILA, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

124.  Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

125.  Plaintiffs rightfully own and possess the confidential, proprietary and trade secret information described in this Complaint, including the methodology used to develop and create the ranking of lawmakers.

126.  Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan wrongfully exerted dominion over the confidential, proprietary and trade secret

27

information belonging to Plaintiffs, including the misappropriation of Plaintiffs' confidential, proprietary and trade secret information as described in this Complaint.

127.   Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's actions constitute wrongful conversion of Plaintiffs' property.

128.   As a direct result of Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's conversion of Plaintiffs' confidential, proprietary and trade secret information, Plaintiffs have incurred and continue to incur damages.

**COUNT VIII**
**COMMON LAW CONVERSION**
(Against Defendant McGowan)

129.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

130.   As described above, despite resigning from Plaintiffs' employment and being required to return all of Plaintiffs' property as set forth in his Agreement, McGowan retained, and continues to retain, possession of Plaintiffs' laptop computer.

131.   To date, McGowan has not returned Plaintiffs' laptop computer.

132.   The laptop computer is Plaintiffs' personal property.

133.   McGowan's actions constitute wrongful conversion of Plaintiffs' property.

134.   As a direct result of McGowan's conversion of Plaintiffs' laptop computer, Plaintiffs have incurred and continue to incur damages.

**COUNT IX**
**BREACH OF CONTRACT**
(Against Defendants, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

135.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

136.   As former employees of Plaintiffs, Defendants McGowan, McGrath, Axler, Reese, and Finnegan signed Agreements agreeing to maintain the secrecy and confidentiality of Plaintiffs' confidential, proprietary and trade secret information.

137.   By signing the Agreement, each of the Defendants McGowan, McGrath, Axler, Reese, and Finnegan agreed, *inter alia*, to (a) "receive and use all Confidential Information only for the purpose for which CPAC and the [Defendants McGowan, McGrath, Axler, Reese, and Finnegan] are associating, and for no other purpose;" (b) not "disclose any Confidential Information to any person, entity, or news outlet, or make public in general, without first obtaining prior written consent from the Chairman or General Counsel of CPAC;" (c) maintain and protect Plaintiffs' confidential, proprietary, and trade secret information from unauthorized disclosure; and (d) upon termination of the relationship between Plaintiffs and Defendants McGowan, McGrath, Axler, Reese, and Finnegan, return all of Plaintiffs' confidential, proprietary, and trade secret information to Plaintiffs.

138.   The Agreements constitute binding, valid, enforceable contracts between Plaintiffs and Defendants McGowan, McGrath, Axler, Reese, and Finnegan.

139.   Defendants McGowan, McGrath, Axler, Reese, and Finnegan breached the Agreements by utilizing Plaintiff's confidential, proprietary, and trade secret information to establish Defendant ILA and develop a state and federal lawmaker rating system that is unequivocally the same as Plaintiffs' scorecards.

140.   Upon information and belief, Defendants McGowan, McGrath, Axler, Reese, and Finnegan have disclosed plaintiffs' confidential information to other employees of ILA, which is a direct violation of their respective Agreements with Plaintiffs.

141.   Plaintiffs fully performed their obligations under the Agreements.

142.   As a direct and proximate result of Defendants McGowan, McGrath, Axler, Reese, and Finnegan's breaches of the Agreements, Plaintiffs have suffered and will continue to suffer substantial damages and financial loss.

## COUNT X
## DEFAMATION PER SE
(Against Defendants ILA and Reese, jointly and severally)

143.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

144.    Defendants ILA and Reese contrived, orchestrated, and engaged in a series of knowing, willful, purposeful and malicious acts designed to impugn, defame and destroy the reputation and business relationships of Plaintiffs by, including, but not limited to, authoring and publishing the Defamatory Statements in the "Soros Files" on Defendant ILA's website.

145.    The Defamatory Statements published by Defendant Reese on Defendant ILA's website constitute defamation per se, as they, *inter alia*, impute that Plaintiffs are directly funded by Mark Zuckerberg, George Soros, and John Arnold and otherwise accuse Plaintiffs of allowing donations to influence the results of Plaintiffs' scorecards.

146.    The Defamatory Statements published by Defendant Reese on Defendant ILA's website seek to undermine the public's trust in Plaintiffs and, in particular, in Plaintiffs' lawmaker rating system.

147.    The Defamatory Statements were false, scandalous and defamatory.

148.    Defendants ILA and Reese knew or reasonably should have known that the Defamatory Statements were false and published said Defamatory Statements either knowingly or with reckless disregard for their truth or falsity.

149.    As a direct and proximate result of the publication of said Defamatory Statements by Defendant Reese on Defendant ILA's website, Plaintiffs' name and

reputation have been damaged, and Plaintiffs are entitled to compensatory and punitive damages for Defendants ILA and Reese's malicious conduct.

## COUNT XI
## CIVIL CONSPIRACY
(Against Defendants, ILA, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

150.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

151.   Upon information and belief, Defendants McGowan, McGrath, Axler, Reese, and Finnegan entered into an agreement to unlawfully obtain and utilize Plaintiffs' confidential, proprietary and trade secret information to facilitate their creation of Defendant ILA to directly compete with Plaintiffs.

152.   Upon information and belief, Defendants McGowan, McGrath, Axler, Reese, and Finnegan combined with an agreed-upon malicious intent to effectuate breaches of fiduciary duty, breaches of their respective Agreements with Plaintiffs, conversion and other tortious conduct as set forth herein by *inter alia* establishing Defendant ILA using Plaintiffs' confidential, proprietary and trade secret information without Plaintiffs' knowledge or consent.

153.   Plaintiffs have suffered, and continue to suffer, significant damages as a result of Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's actions.

## COUNT XII
## CIVIL CONSPIRACY
(Against Defendants, ILA, McGowan, McGrath, Axler, Reese, and Finnegan,
jointly and severally)

154.    Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

155.    Upon information and belief, Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan entered into an agreement to defame and disparage Plaintiffs by creating and publishing the "Soros Files" on Defendant ILA's website with the malicious intent to harm Plaintiffs.

156.    As former employees of Plaintiffs, Defendants McGowan, McGrath, Axler, Reese, and Finnegan knew or should have known that the Defamatory Statements published in the "Soros Files" were false and defamatory.

157.    As an entity formed and controlled by Defendants McGowan, McGrath, Axler, Reese, and Finnegan, Defendant ILA knew or should have known that the Defamatory Statements published in the "Soros Files" were false and defamatory.

158.    Upon information and belief, Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan combined with an agreed-upon malicious intent to publish the Defamatory Statements in order to harm Plaintiffs.

159.   Plaintiffs have suffered, and continue to suffer, significant damages as a result of Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's actions.

## <u>COUNT XIII</u>
## CIVIL CONSPIRACY
(Against Defendants, McGowan, McGrath, and Finnegan, jointly and severally)

160.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

161.   Upon information and belief, Defendants McGowan, McGrath, and Finnegan entered into an agreement to financially benefit to Plaintiffs' detriment by having McGowan, without Plaintiffs' authority, manually override internal controls to add accrued leave time for himself, and others, including Defendants McGrath and Finnegan.

162.   Upon information and belief, Defendants McGowan, McGrath, and Finnegan combined with an agreed-upon intent to steal from Plaintiffs.

163.   To date, Defendants McGowan, McGrath and/or Finnegan have not reimbursed Plaintiffs' from the benefits that they each have unlawfully retained.

164.   Plaintiffs have suffered, and continue to suffer, significant damages as a result of Defendants McGowan, McGrath, and Finnegan's actions.

## COUNT XIV
## FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114
(Against Defendant, ILA)

165.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

166.   As described above, Plaintiff ACU owns federally registered "Star Mark" and has utilized said star mark in commerce in connection with its lawmaker ratings.

167.   Plaintiff's federally-registered "Star Mark" is strong and distinctive.

168.   Defendant ILA has adopted a substantially similar mark that is used in connection with similar lawmaker ratings provided to the same customers, as well as the public.

169.   Defendant's star logo is confusingly similar to Plaintiff ACU's "Star Mark" in appearance and meaning.  Defendants' use of their star logo, as well as colors and graphics that are similar to those utilized by Plaintiffs, has caused, and is likely to cause, confusion or mistake as to the source or origin of the parties' respective goods and services.

170.   Plaintiff ACU has been utilizing the star mark long before Defendant ILA was even incorporated.

171.   Upon information and belief, Defendant ILA knew or should have known of Plaintiffs' ownership and use of the "Star Mark" prior to adopting a substantially similar version of the same.

172.   Defendant ILA's acts caused, and will continue to cause, confusion, mistake, or deception as to the true source or origin of Defendant ILA's services and create a false impression of their authorization or sponsorship by Plaintiffs.  *See* Exhibit "I".

173.   Upon information and belief, Defendant ILA's actions were undertaken willfully, with the intent to confuse and deceive the public, and with reckless disregard.   Defendants' conduct was, and is, a wanton and willful infringement of Plaintiff's federally-registered trademark.

174.   Defendant ILA's conduct has led to actual confusion in the relevant market and usurped the value of Plaintiff's registered mark, placing Plaintiff's goodwill and reputation beyond its control.

175.   Defendant ILA has caused, and continues to cause, irreparable injury to Plaintiffs, including Plaintiffs' goodwill and reputation.

## COUNT XV
## FALSE DESIGNATION OF ORIGIN
### 15 U.S.C. § 1125
(Against Defendant ILA)

176.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

177.   As described above, Plaintiffs have an existing and active trademark for its star mark.

178.   Defendant ILA provides the general public with ratings of lawmakers using a substantially similar variation of Plaintiffs' federally registered "Star Mark".

179.   Defendant ILA's use of a star logo has created, and continues to create, a likelihood of confusion on the part of legislators and the general public.

180.   Defendant ILA is aware, or ought to have been aware, the Plaintiffs own the protected "Star Mark".

181.   Defendant ILA used and continues to use in commerce images, words, terms, names, false and misleading descriptions of fact, false designations of origin, and to make false or misleading representations of fact in connection with its business.

182.   Defendant ILA's unlawful, unauthorized, and unlicensed use of Plaintiffs' trademark has benefited Defendant ILA and caused Plaintiffs' irreparable damage and injury.

183.   Defendant ILA's actions, as set forth in this Complaint, as well as Defendant ILA's unlawful use of Plaintiffs' trademarked star mark, violate 15 U.S.C. § 1125(a).

**COUNT XVI**
**UNJUST ENRICHMENT**
*in the alternative*
(Against Defendants, ILA, McGowan, McGrath, Axler, Reese, and Finnegan,
jointly and severally)

184.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

185.   Without Plaintiffs' authorization, Defendants, McGowan, McGrath, Axler, Reese, and Finnegan unlawfully utilized Plaintiffs' confidential, proprietary and trade secret information to create Defendant ILA.

186.   Defendant ILA knew or should have known that the information used by Defendants, McGowan, McGrath, Axler, Reese, and Finnegan was unlawfully taken from Plaintiffs.

187.   Defendants, ILA, McGowan, McGrath, Axler, Reese, and Finnegan have not compensated Plaintiffs for their use of Plaintiffs confidential, proprietary, and trade secret information.

188.   As a result of Defendants, McGowan, McGrath, Axler, Reese, and Finnegan's actions, Defendants ILA, McGowan, McGrath and Finnegan have been unjustly enriched to Plaintiffs' detriment.

## COUNT XVII
## UNJUST ENRICHMENT
### *in the alternative*
(Against Defendants, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

189.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

190.   As previously described herein, Defendants McGowan, McGrath, Axler, Reese and Finnegan each executed Agreements agreeing to maintain the secrecy of Plaintiffs' confidential, proprietary and trade secret information.

191.   Defendants, McGowan, McGrath, Axler, Reese, and Finnegan unlawfully utilized Plaintiffs' confidential, proprietary and trade secret information to create Defendant ILA and, therefore, breached their respective agreements with Plaintiffs.

192.   Defendants, McGowan, McGrath, Axler, Reese, and Finnegan's breach of contract has caused Plaintiffs monetary and reputational harm, which has benefitted Defendants, ILA McGowan, McGrath, Axler, Reese, and Finnegan.

193.   As a result of Defendants, McGowan, McGrath, Axler, Reese, and Finnegan's breach of contract, Defendants ILA, McGowan, McGrath and Finnegan have been unjustly enriched to Plaintiffs' detriment.

## COUNT XVIII
## UNJUST ENRICHMENT
### *in the alternative*
(Against Defendants, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

194. Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

195. As previously described herein, Defendants McGowan, McGrath, Axler, Reese and Finnegan each executed Agreements agreeing, *inter alia*, to "not make, either directly or by or through another person, any oral or written negative, disparaging or adverse statements or representations concerning CPAC entities."

196. Upon information and belief, Defendants, McGowan, McGrath, Axler, Reese and Finnegan each contributed to the "Soros Files" authored by Reese and published on ILA's website and, therefore, breached their respective agreements with Plaintiffs.

197. Defendants, McGowan, McGrath, Axler, Reese, and Finnegan's breach of contract has caused Plaintiffs monetary and reputational harm, which has benefitted Defendants, ILA McGowan, McGrath, Axler, Reese, and Finnegan.

198. As a result of Defendants, McGowan, McGrath, Axler, Reese, and Finnegan's breach of contract, Defendants ILA, McGowan, McGrath and Finnegan have been unjustly enriched to Plaintiffs' detriment.

## COUNT XIX
## UNJUST ENRICHMENT
### *in the alternative*
(Against Defendant McGowan)

199.   Plaintiffs incorporate the preceding paragraphs as set forth at length herein.

200.   As described above, despite resigning from Plaintiffs' employment and being required to return all of Plaintiffs' property as set forth in his Agreement, McGowan retained, and continues to retain, possession of Plaintiffs' laptop computer.

201.   To date, McGowan has not returned Plaintiffs' laptop computer.

202.   The laptop computer is Plaintiffs' personal property.

203.   By failing to return Plaintiffs' laptop, McGowan has been, and continues to be, unjustly enriched to Plaintiffs' detriment.

## COUNT XX
## UNJUST ENRICHMENT
### *in the alternative*
(Against Defendants, McGowan, McGrath, and Finnegan, jointly and severally)

204.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

205.   As discussed above, without Plaintiffs' authorization, Defendant McGowan entered the ADP payroll system and manually overrode internal controls

41

to add accrued leave time for the benefit of individuals, including, but not limited to, himself and Defendants McGrath and Finnegan.

206.   Defendant McGowan's conduct constitutes embezzlement from Plaintiffs.

207.   Defendants McGowan, McGrath and Finnegan have not compensated Plaintiffs for the improperly accrued leave time.

208.   As a result of Defendant McGowan's unauthorized conduct, Defendants McGowan, McGrath and Finnegan have been unjustly enriched to Plaintiffs' detriment.

## <u>COUNT XXI</u>
## TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS
(Against Defendants, ILA, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

209.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

210.   Plaintiffs had valuable economic relations with its donors, customers and clients.

211.   The actions taken by Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan, as set forth above, constitute tortious conduct that was clearly intended to interfere with Plaintiffs' economic relations with its donors, customers and clients.

212.   The actions taken by Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan are not protected by any privilege applicable to competition among business competitors, because they fall outside of the scope of socially acceptable conduct that the law regards as privileged.

213.   Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's improper conduct includes misappropriating Plaintiffs' confidential, proprietary and trade secret information for the purposes of unlawfully soliciting donors away from Plaintiffs.

214.   Plaintiffs have been harmed as a direct and proximate result of Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's misappropriation of Plaintiffs' confidential, proprietary and trade secret information.

215.   Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's intentional, willful and wanton conduct, as described herein, warrants the imposition of punitive or exemplary damages.

### <u>COUNT XXII</u>
### TORTIOUS INTERFERENCE WITH EXISTING CONTRACT
(Against Defendants, ILA, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

216.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

217.   As described above, Plaintiffs entered into a contractual agreement with a substantial donor for sponsorship of a series of events to be held during CPAC 2024.

218.   Plaintiffs have contracted with a substantial donor for CPAC in the past.

219.   As prior employees of Plaintiffs, Defendants, McGowan, McGrath, Axler, Reese and Finnegan knew or should have known that Plaintiffs contracted with the substantial donor for CPAC 2024.

220.   On or about February 8, 2024, a substantial donor contacted Plaintiffs and withdrew from sponsoring events during CPAC 2024.

221.   The substantial donor decided to withdraw from sponsoring events during CPAC 2024 based upon Defendant ILA's postings, which include the "Soros Files."

222.   The substantial donor withdrew from sponsoring events during CPAC 2024 as a direct and proximate result of Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's civil conspiracy to defame Plaintiffs.

223.   The contract between Plaintiffs and a substantial donor was valued at $17,000.00.

224.   Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's intentional, willful and wanton conduct, as described herein, warrants the imposition of punitive or exemplary damages.

## COUNT XXIII
## UNFAIR COMPETITION
(Against Defendants, ILA, McGowan, McGrath, Axler, Reese, and Finnegan, jointly and severally)

225.   Plaintiffs incorporate the preceding paragraphs as if set forth at length herein.

226.   Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan are in possession of Plaintiffs' confidential, proprietary and trade secret information and have used the same to interfere with Plaintiffs' business.

227.   Without Plaintiffs' authorization, Defendants, McGowan, McGrath, Axler, Reese, and Finnegan unlawfully utilized Plaintiffs' confidential, proprietary and trade secret information to create Defendant ILA.

228.   Defendant ILA knew or should have known that the information used by Defendants, McGowan, McGrath, Axler, Reese, and Finnegan was unlawfully taken from Plaintiffs.

229.   Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan undertook the foregoing acts with knowledge of and disregard for Plaintiffs' rights, and with the intention of causing harm to Plaintiffs for Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's own benefit.

230.  Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan are unfairly competing in the marketplace while using Plaintiffs' confidential, proprietary and trade secret information to unfairly compete with Plaintiffs.

231.  Plaintiffs have suffered and will continue to suffer irreparable harm and loss as a result of Defendants ILA, McGowan, McGrath, Axler, Reese, and Finnegan's conduct.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs respectfully request that this Court:

**A.**  Enter judgment in Plaintiffs' favor, and against Defendants McGowan, McGrath, Axler, Reese and Finnegan, jointly and severally, on Counts I, II, VI, IX, XVII, and XVIII;

**B.**  Enter judgment in Plaintiffs' favor, and against Defendant McGowan on Counts III, VIII, and XIX;

**C.**  Enter judgment in Plaintiffs' favor, and against Defendants ILA, McGowan, McGrath, Axler, Reese and Finnegan, jointly and severally on Counts IV, V, VII, XI, XII, XVI, XXI, XXII, and XXIII;

**D.**  Enter judgment in Plaintiffs' favor, and against Defendants ILA and Reese, jointly and severally on Count X;

**E.**       Enter judgment in Plaintiffs' favor, and against Defendants McGowan, McGrath and Finnegan, jointly and severally, on Counts XIII and XX;

**F.**       Enter judgment in Plaintiffs' favor, and against Defendant ILA on Counts XIV and XV;

**G.**       Enter a judgment awarding treble damages suffered by Plaintiffs plus costs, interest, and attorneys' fees incurred in connection herewith;

**H.**       Enter a judgment awarding actual and compensatory damages to compensate Plaintiffs for Defendants' misconduct complained of herein, including, but not limited to, interests and costs, in an amount to be proven at trial;

**I.**       Enter a judgment awarding punitive damages in an amount sufficient to punish Defendants and deter them from engaging in similar conduct; and

**J.**       Grant Plaintiffs all other relief as this Court deems just and proper.

## JURY DEMAND

Trial by jury is demanded as to all claims.

Respectfully submitted,
DICKINSON WRIGHT PLLC


/s/ Charles R. Spies
Charles R. Spies, Esq.
Virginia Bar No.:  43224
1825 Eye Street NW, Suite 900
Washington, D.C. 20006
Telephone: 202.466.5964
Facsimile:  844.670.6009
E-Mail: cspies@dickinson-wright.com
*Counsel for Plaintiffs, American*
*Conservative Union and American*
*Conservative Union Foundation*