IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AMERICAN CONSERVATIVE UNION, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 1:24-cv-500 (RDA/LRV) |
| INSTITUTE FOR LEGISLATIVE ANALYSIS, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 30) and Plaintiff's Motion for Leave to File a Third Amended Complaint (Dkt. 33). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motions together with the Memorandum in Support (Dkt. 31), the Oppositions (Dkts. 34, 37), and Replies (Dkts. 36, 39), the Court GRANTS the Motion to Dismiss and DENIES the Motion to Amend for the reasons that follow.

I. BACKGROUND

A. Factual Background

Plaintiffs in this action are the American Conservative Union ("ACU") and the American Conservative Union Foundation ("ACUF"). Dkt. 29 at 1. In the Second Amended Complaint, Plaintiffs alleged that ACU is a 501(c)(4) nonprofit organization located in Alexandria, Virginia. *Id.* at ¶ 5. Plaintiffs similarly allege that ACUF is a 501(c)(3) nonprofit organization located in

1

Alexandria, Virginia. *Id.* ¶ 6. Plaintiffs allege that Defendant Institute for Legislative Analysis ("ILA") is a political research organization incorporated in Delaware with an office in the District of Columbia. *Id.* ¶ 7. Plaintiffs allege that Defendant Ryan McGowan resides in Montgomery, Maryland. *Id.* ¶ 8. Plaintiffs allege that Defendant Zoe Reese resides in Clark County, Nevada. *Id.* ¶ 9. The Second Amended Complaint asserts four state-law claims against the various Defendants. Dkt. 29.

Defendants produced evidence that, in 2024, when the original Complaint was filed, Plaintiff ACU was a corporation organized under the laws of the District of Columbia Non-Profit Corporation Act. Dkt. 31-1. Defendants further produced evidence that ACUF is a corporation organized under the laws of the District of Columbia Non-Profit Corporation Act. Dkt. 31-2. Defendants also produced evidence that Defendant ILA's principal place of business is located at 300 Independence Avenue, S.E., in the District of Columbia. Dkt. 31-3.

In the proposed Third Amended Complaint, Plaintiffs allege that Plaintiff ACU is a 501(c)(4) nonprofit organization incorporated in the State of Wyoming with its principal place of business located at 1199 North Fairfax Street, Suite 500, Alexandria, Virginia 22314. Dkt. 33-2 ¶ 5. Plaintiffs also allege that Plaintiff ACUF is a 501(c)(3) nonprofit organization incorporated in the State of Wyoming with its principal place of business located at 1199 North Fairfax Street, Suite 500A, Alexandria, Virginia 22314. *Id.* ¶ 6. And Plaintiffs allege the residences and citizenship of Defendants as asserted by Defendants. *Id.* ¶¶ 7-9.

B. Procedural Background

On March 28, 2024, Plaintiffs filed their Complaint. Dkt. 1. Defendants filed a Motion to Dismiss on April 22, 2024. Dkt. 11. In response, Plaintiffs filed an Amended Complaint. Dkt. 15. Accordingly, the Court denied the Motion to Dismiss as Moot. Dkt. 15.

On May 21, 2024, Defendants filed a second Motion to Dismiss.  Dkt. 19.  On February 13, 2025, the Court issued a Memorandum Opinion and Order granting in part and denying in part the Motion to Dismiss.  Dkt. 28.

On March 3, 2025, Plaintiffs filed a Second Amended Complaint.  Dkt. 29.  On March 7, 2025, Defendants filed a third Motion to Dismiss.  Dkt. 30.  In response, Plaintiffs filed a Motion for Leave to File a Third Amended Complaint and Opposition to the Motion.  Dkts. 33, 34.  On March 24, 2025, Defendants filed a reply in support of the Motion to Dismiss and an Opposition to the Motion to Amend.  Dkts. 36, 37.  On March 31, 2025, Plaintiffs filed a Reply in support of the Motion to Amend.  Dkt. 39.

## II. ANALYSIS

Plaintiffs effectively concede that the Second Amended Complaint fails to assert the necessary facts to establish diversity jurisdiction.  Dkt. 34 (noting that the proposed Third Amended Complaint "clarifies the citizenship of each party").  Accordingly, the Motion to Dismiss will be granted.  The central dispute between the parties is thus whether Plaintiffs should be permitted to file their proposed Third Amended Complaint or whether such filing would be futile.

Federal Rule of Civil Procedure 15(a)(2) allows a party to "amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. 15(a)(2).  A court should deny leave to amend a pleading "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Johnson v. Oroweat Food Co.*, 785 F.2d 503, 509 (4th Cir. 1986).  "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss."  *Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transportation*, 914 F.3d 213, 228 (4th Cir. 2019).

3

Here, the central dispute is whether the Third Amended Complaint adequately establishes subject matter jurisdiction based on diversity, following "ACU and ACUF's redomestication in Wyoming on September 18, 2024 and September 19, 2024." Dkt. 39 at 1; Dkts. 36-1, 36-2. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by [the United States] Constitution or a statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A federal district court has original diversity jurisdiction over civil actions when the amount in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). "Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W.Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir.2011) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). The requisite citizenship is determined as of the date the complaint is filed, rather than some later date. *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir.1999) (citing *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)). The parties here disagree as to whether there is complete diversity as necessary to establish diversity jurisdiction.

Essentially, the parties agree, and the pleadings and documents submitted support, the following information regarding citizenship: (i) at the time the Complaint was filed, ACU and ACUF were "citizens" of the District of Columbia and Virginia; (ii) as of September 2024, ACU and ACUF were citizens of Wyoming and Virginia; (iii) ILA is a citizen of Delaware and the District of Columbia; (iv) McGowan is a citizen of Maryland; and (v) Reese is a citizen of Nevada. Thus, if diversity is measured at the time the original Complaint was filed, then this Court lacks

4

subject matter jurisdiction because the parties are not completely diverse; if, on the other hand, diversity is measured at the time the Second Amended Complaint was filed, then the parties are completely diverse.  In this regard, Defendants have the better argument.

As the Supreme Court has recognized, "[i]t has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004).  The Supreme Court has described this rule as "hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure," and stated that it "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." *Id.*  Thus, courts have held that a post-filing change in citizenship cannot cure a defect in diversity. *See Turner v. Digital Broadcast Corp.*, 894 F. Supp. 2d 748, 750 n.1 (W.D. Va. 2012) ("While the defendants concede that Silver moved out of Virginia shortly after the complaint was filed, a jurisdictional defect cannot be cured after the fact, even if upon dismissal the plaintiff could properly re-file immediately after dismissal."); *see also Chevaldina v. Katz*, 787 F. App'x 651, 653 (11th Cir. 2019) ("Because diversity of citizenship must exist at the time an action is filed in order to be proper and events occurring after the filing of an action cannot create or destroy diversity jurisdiction, the district court did not err in dismissing Chevaldina's second amended complaint.").  Accordingly, the amendments proposed in the Third Amended Complaint would be futile because they cannot cure the lack of diversity at the time of the filing of the Complaint.

Seeking to avoid this conclusion, Plaintiffs rely on language from the recent Supreme Court decision in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025).  In *Royal Canin*, the Supreme Court noted, "[i]f a plaintiff amends her complaint, the new pleading 'supersedes' the

5

old one," and that the "reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction." *Id.* at 35-36. But, in that case, the Supreme Court was addressing a question of federal question jurisdiction and determined that a plaintiff may destroy federal question jurisdiction if the plaintiff removed their federal claims from an amended pleading. *Id.* at 25. Thus, the Supreme Court was not specifically addressing diversity jurisdiction nor undermining the so-called "hornbook law" referenced in *Grupo Dataflux*. Moreover, in the wake of the *Royal Canin* decision, courts have declined to "read *Royal Canin* as overturning that century-old precedent." *Echo DCL, LLC v. Insight Invs., LLC*, 2025 WL 2753733, at *3 (E.D. Tex. Sept. 29, 2025). And, importantly, in *Royal Canin* itself, the Supreme Court distinguished the facts presented to it there from the rule "operating in diversity cases, which evaluates a party's citizenship (*e.g.*, whether the defendant is in fact from New York) at the time a suit is brought, and never again later." *Royal Canin*, 604 U.S. at 36 n. 5. Thus, *Royal Canin* itself did not purport to change the rule established in *Grupo Dataflux*. Accordingly, the Motion to Amend will be denied.

### III.   CONCLUSION

In short, at the time that the original Complaint was filed in federal court, there was a lack of diversity between the parties in this case. Plaintiffs' subsequent change of citizenship from the District of Columbia to Wyoming cannot cure this jurisdictional defect, no matter the inefficiency that may be created by a dismissal without prejudice – as dismissal for lack of subject matter jurisdiction must be – and a subsequent refiling.

Accordingly, it is hereby ORDERED that the Motion to Dismiss (Dkt. 30) is GRANTED; and it is

FURTHER ORDERED that the Motion to Amend (Dkt. 33) is DENIED; and it is

6

FURTHER ORDERED that the Second Amended Complaint (Dkt. 29) is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that the Clerk of Court is DIRECTED to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
February 2, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge